# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:20-CV-00036-RJC-DSC

| | |
|---|---|
| **RASHONDA WHEELER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **BMW OF NORTH AMERICA LLC,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on "Defendant's Motion to Dismiss," Doc. 17, and the parties' briefs, Docs. 20, 22 and 23.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and the Motion is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion be granted in part and denied in part, as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Accepting the factual allegations of the Complaint as true, on September 21, 2015, Plaintiff Rashonda Wheeler purchased a used 2012 BMW 750i vehicle ("vehicle") from Hendrick BMW in Charlotte, North Carolina. Hendrick BMW is an authorized dealer of Defendant BMW of North America LLC. Plaintiff's vehicle was accompanied by a New Vehicle Limited Warranty and a

Certified Pre-Owned Limited Warranty. Under the New Vehicle Limited Warranty, Defendant promised to repair or replace components found to be defective in material or workmanship during the four-year/50,000-mile period following the vehicle's delivery to the first retail purchaser. Similarly, under the Certified Pre-Owned Limited Warranty, Defendant promised to repair or replace components found to be defective in material or workmanship during the six-year/100,000-mile period following the original vehicle delivery.

Plaintiff's vehicle is equipped with an N63 engine. Within a few months after purchasing the vehicle, Plaintiff observed that the engine consumed an excessive amount of oil. Specifically, the vehicle's engine seemed to require a new quart of oil every 3,000 miles. Plaintiff considered this consumption "abnormal" and "excessive" because BMW had previously advised that the vehicle would only require oil changes every 15,000 miles or two years.

During the warranty period, Plaintiff complained multiple times to Hendrick BMW about the oil consumption issue. She brought vehicle to Hendrick BMW for inspections and attempted repairs related to the oil consumption issue at least six times. On at least two of those occasions, Hendrick BMW told Plaintiff that her vehicle's oil consumption was "normal." On December 27, 2017, Hendrick BMW added 1.5 quarts of oil to the engine. Defendant had originally recommended that service technicians add only one quart when changing the oil. On May 23, 2018, Hendrick BMW added two quarts of oil.

Plaintiff then wrote directly to Defendant on July 16, 2018, and July 20, 2018. She complained that during the warranty period, she presented the vehicle for repair due to abnormal oil consumption that required her to add a quart of oil every 3,000 miles. Despite her complaints, the problem continued. On internet forums, Plaintiff discovered that other BMW owners with N63 engines were also complaining about excessive oil consumption.

Plaintiff alleges that Defendant has known about the N63 engine's oil consumption defect since at least 2008, if not before. Defendant has issued at least four technical service bulletins or communications from the manufacturer to its dealers related to N63 engine oil consumption. In particular, in June 2013, Defendant issued technical service bulletin SIB-11-01-13, which changed the oil consumption specifications for vehicles equipped with an N63 engine. SIB-11-01-13 instructed BMW service technicians to begin adding two quarts of oil to vehicles with N63 engines. Previously, BMW had instructed technicians to add only one quart of oil to N63 engines. But if vehicles are overfilled, the oil can become aeriated resulting in potential oil starvation and reduced oil pressure.

After receiving hundreds of customer complaints, Defendant launched an "N63 Customer Care Package" on December 29, 2014. The Customer Care Package instructed BMW service technicians to check each covered vehicle's timing chain, fuel injectors, mass air flow sensors, crankcase vent lines, battery, engine vacuum pump, and low pressure fuel sensor, and replace any of those components if necessary. BMW service representatives were to inspect and replace those components at no charge, even if no longer covered by the manufacturer's standard four-year/50,000-mile warranty. BMW also reduced its recommended oil change intervals for vehicles equipped with N63 engines from the earlier of 15,000 miles or two years to the earlier of 10,000 miles or one year. In addition, BMW launched an "N63 Customer Loyalty Offer," which offered purchasers discounts on new BMW vehicles to replace their defective N63 vehicles.

On January 17, 2020, Plaintiff filed her Complaint, Doc. 1, alleging claims for breach of warranty and breach of implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 ("MMWA"). She also alleges state law claims for breach of implied warranty of merchantability pursuant to N.C. Gen. Stat. § 25-2-314, breach of express

warranties pursuant to N.C. Gen. Stat. § 25-2-313, violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA"), and fraudulent concealment.

On April 13, 2020, Plaintiff filed her Amended Complaint. Doc. 17.

On April 27, 2020, Defendant filed its Motion to Dismiss. Doc. 19. BMW seeks dismissal of the Amended Complaint based upon the applicable statute of limitations. Defendant also argues that Counts IV and V of the Amended Complaint should be dismissed by application of the economic loss rule. Finally, Defendant argues that Count III should be dismissed for failure to plead reliance.

## II. DISCUSSION

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they

are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (alleging that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me-accusation." Id. at 678. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . ." Id.; see also Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 175, 180 (4th Cir. 2000)(explaining that while the court accepts plausible factual allegations made in a claim as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Iqbal at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-

'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 F. App'x 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### A. Plaintiff's Warranty-Based Claims are Not Barred by the Applicable Statute of Limitations

BMW argues that Plaintiff's warranty-based claims are barred by the applicable statute of limitations.[1]

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. A Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). As such, "asserting an affirmative defense, like a statute of limitations defense, in a motion to dismiss presents a particular 'procedural stumbling block' for defendants." CSX Transp., Inc. v. Gilkison, 406 F. App'x 723, 728 (4th Cir. 2010) (per curiam) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)). As the Fourth Circuit has explained:

---

[1] Defendant also argues that Plaintiff's fraud-based claims should be dismissed pursuant to the applicable statute of limitations. But as discussed below, those claims are barred by the economic loss rule.

> [A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] on the face of the complaint."

Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Forst, 4 F.3d at 250); see also Johnson v. N.C. Dep't of Transp., 418 S.E.2d 700, 702 (N.C. Ct. App. 1992) (dismissal under Rule 12(b)(6) on the grounds of affirmative defense of statute of limitations is proper "if the complaint on its face reveals an 'insurmountable bar' to recovery" (citation omitted)). "To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." CSX Transp., 406 F. App'x at 728–29 (quoting Goodman, 494 F.3d at 466).

Counts I and II allege breach of express and implied warranties under the MMWA, 15 U.S.C. §§ 2301-2312. Counts II and III allege breach of implied and express warranties under N.C. Gen. Stat. § 25-2-314 and N.C. Gen. Stat. § 25-2-313 respectively. Plaintiff's federal and state warranty claims are all subject to the limitations period set forth in N.C. Gen. Stat. § 25-2-725. See Fairchild v. Kubota Tractor Corp., No. 1:18CV69, 2018 WL 4038126, at *6 (W.D.N.C. Aug. 23, 2018) (holding that a claim for breach of an express warranty is subject to the limitations period set forth in N.C. Gen. Stat. § 25-2-725); Ferro v. Volvo Penta of the Ams., LLC, No. 5:17-CV-194-BO, 2017 WL 3170071, at *2 (E.D.N.C. Aug. 28, 2017) ("The MMWA does not contain a statute of limitations, but when evaluating timeliness of claims under the MMWA, courts are directed to use the applicable state law."). Under N.C. Gen. Stat. § 25-2-725, a four-year period applies to breach of contract claims and a "breach of warranty occurs when tender of delivery is made." § 25-2-725(1)-(2).

BMW argues that Plaintiff's warranty-based claims are barred by the four-year statute of limitations set out in N.C. Gen. Stat. § 25-2-725(1). Defendant contends that Plaintiff's warranty-based claims began to accrue upon tender of delivery of the vehicle. Defendant then argues that, given that Plaintiff's vehicle was "used," it was presumably delivered to a prior owner sometime before Plaintiff's purchase date of September 21, 2015. Accordingly, BMW contends that applying the four-year period from the date of delivery, Plaintiff's warranty-based claims would have accrued sometime before September 21, 2019. Defendant asserts that since Plaintiff filed her Complaint on January 17, 2020, her warranty-based claims are time-barred by the four-year statute of limitations. Moreover, Defendant argues that despite Plaintiff's claim that BMW concealed the N63 engine defect, the internet forums that she consulted put her on notice of the vehicle's oil consumption rate.

Plaintiff argues that the statute of limitations for her warranty-based claims was tolled by the fraudulent concealment doctrine. Under the fraudulent concealment doctrine, a plaintiff must plead that "(1) [defendant] fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119, 122 (4th Cir. 1995) (citing Weinberger v. Retail Credit Co., 498 F.2d 552, 555 (4th Cir. 1974)). "[P]ursuant to this doctrine, 'when the fraud has been concealed or is of such a character as to conceal itself,' and the plaintiff is not negligent or guilty of laches, the limitations period does not begin to run until the plaintiff discovers the fraud." Id.

Plaintiff asserts that the fraudulent concealment doctrine tolled the statute of limitations for her warranty-based claims because she did not and could not have known that the vehicle's engine was defective at the time of purchase or any time thereafter. Specifically, Plaintiff points to the

dealership's repeated statements that the excessive oil consumption was "normal" and not the result of any defect. She argues that excessive oil consumption is only a symptom of the underlying defect in the N63 engine. She contends that although BMW knew about the N63 engine defect as early as 2008, it failed to disclose the defect to her at the time of purchase and every subsequent time she returned to Hendrick BMW for repairs.

Further, Plaintiff argues that Defendant's technical service bulletins were part of steps BMW took to continue to conceal the defect with its N63 engines and reduce the number of customer complaints. Plaintiff relies on SIB-11-01-13, which instructed service technicians to begin adding two quarts of oil instead of the original one quart to vehicles with N63 engines. She contends that while this measure likely decreased the number of complaints BMW received about the oil consumption issue, "overfilling" the engine also puts vehicles at risk of oil starvation. Similarly, Plaintiff asserts that BMW's measures implemented in December 2014 under the N63 Customer Care Package, including reducing the mileage for recommended engine oil change intervals, continued to conceal the underlying N63 engine defect. Finally, Plaintiff argues that other customers' complaints on the internet could not have alerted her to the vehicle's underlying defect when Defendant's dealership continued to reassure her that excessive oil consumption was "normal."

Viewing the factual allegations in the light most favorable to Plaintiff, nothing "clearly appears" on the face of the Complaint to show that she knew or should have known about the defect in the N63 engine by September 21, 2019. See CSX Transp., 406 F. App'x at 729. The Court must then determine whether Plaintiff exercised due diligence to discover the defect. Determining the reasonableness of Plaintiff's due diligence necessitates fact-intensive inquiries that would be better resolved at summary judgment or, if necessary, at trial. See id. at 730.

Accordingly, the undersigned respectfully recommends that BMW's Motion to Dismiss Plaintiff's warranty-based claims on the basis of the applicable statute of limitations be denied.

### B. Plaintiff's Claims for Violation of the Unfair and Deceptive Trade Practices Act and Fraudulent Concealment are Barred by North Carolina's Economic Loss Rule

Plaintiff's claims for violation of the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, (Count IV) and fraudulent concealment (Count V) should be dismissed. Her Amended Complaint fails to allege facts arising outside of the primary breach of warranty to overcome the North Carolina economic loss rule.

The economic loss rule "prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law." Lord v. Customized Consulting Specialty, Inc., 643 S.E.2d 28, 29 (N.C. Ct. App. 2007); see ACS Partners, LLC v. Americon Group, Inc., No. 3:09cv464-RJC-DSC, 2010 WL 883663, at *7 (W.D.N.C. Mar. 5, 2010). The doctrine was first explained by the North Carolina Supreme Court in North Carolina State Ports Authority v. Lloyd A. Fry Roofing Co., 240 S.E.2d 345, 350 (1978), rev'd on other grounds, where the Supreme Court outlined the general rule that "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." Thus, the economic loss rule applies when a contractual remedy is sought, such as in a breach of warranty claim. See Ellis v. Louisiana-Pac. Corp., No. 3:11CV191, 2011 WL 5402872, at *1 (W.D.N.C. Nov. 8, 2011) (citing Kelly v. Georgia-Pac., LLC, 671 F. Supp. 2d 785, 794 (E.D.N.C. 2009)). "A tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract." Spillman v. Am. Homes of Mocksville, Inc., 422 S.E.2d 740, 741-742 (N.C. Ct. App. 1992).

In particular, the Fourth Circuit has held that the economic loss rule bars "'attempt[s] by the plaintiff to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim.'" Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158 (4th Cir. 2018) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998)). Similarly, district courts have dismissed fraud claims, as well as claims for violation of the UDTPA, where "the only damage alleged is damage to the product itself and the allegations of unfair and deceptive trade practices are intertwined with the breach of contract or warranty claims." Wireless Commc'ns, Inc. v. Epicor Software Corp., Civil No. 3:10CV556-DSC, 2011 WL 90238, at *4 (W.D.N.C. Jan. 11, 2011) (quoting Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006)).

The North Carolina Court of Appeals more specifically addressed the relationship between fraud claims and the economic loss rule in Bradley Woodcraft, Inc. v. Bodden, 795 S.E.2d 253, 259 (N.C. Ct. App. 2016), stating that, "while claims for negligence are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud are not so barred and, indeed, '[t]he law is, in fact, to the contrary: a plaintiff may assert both claims'" (citing *Jones v. Harrelson & Smith Contractors, LLC*, 670 S.E.2d 242, 250 (N.C. Ct. App. 2008)). In Legacy Data Access, the Fourth Circuit explained its interpretation of Bradley Woodcraft:

> Bradley Woodcraft is simply another application of the principle that the economic loss rule does not bar tort claims based on an independent legal duty, which is "'identifiable' and distinct" from the contractual duty… What matters is not whether a plaintiff has alleged a negligence tort or an intentional tort, but whether the defendant has breached some duty other than a contractual duty, such that the tort claim is "identifiable and distinct" from the breach of contract claim.

889 F.3d at 166.

Thus, under the Fourth Circuit's interpretation of North Carolina's economic loss rule, a fraud claim is barred unless the plaintiff pleads that the defendant owed a separate, "independent legal duty" that is "'distinct" from the defendant's contractual duty. Id. The Middle District of North Carolina applied this interpretation in deciding City of High Point, N.C. v. Suez Treatment Sols., Inc., No. 1:19CV540, 2020 WL 1307017, at *9 (M.D.N.C. Mar. 19, 2020), requiring the plaintiff in that case to plead that defendant owed a duty independent from the contract.

Accordingly, as in any situation where the plaintiff alleges tort claims arising from a breach of warranty, the initial question is whether she seeks recovery for an economic loss. "[W]hen a component part of a product or a system injures the rest of the product or the system, only economic loss has occurred." Wilson v. Dryvit Sys., Inc., 206 F. Supp. 2d 749, 753 (E.D.N.C. 2002). Here, Plaintiff seeks to recover costs related to the vehicle's excessive oil consumption and Defendant's alleged failure to honor the terms of its warranty. Doc. 17 at ¶ 6. Plaintiff even identifies her damages as "economic damages." Id. at 132. The Amended Complaint contains no allegations of physical injuries or injuries to any of Plaintiff's property besides the vehicle. Thus, Plaintiff is seeking recovery for economic loss only.

The remaining question is whether Plaintiff's fraud-based claims include allegations that Defendant owed her an "independent legal duty" that is "'distinct" from its duty under the warranties. Legacy Data Access, 889 F.3d at 166. Plaintiff has failed to allege that Defendant owed such an independent duty. While Plaintiff argues that Defendant owed a duty not to induce her into purchasing the vehicle, her fraud claims remain intertwined with her warranty-based claims. Plaintiff's fraudulent concealment claim extends into the time period when Defendant's warranties were in effect. Plaintiff alleges that, "[w]hile Defendant knew about the oil consumption defect, and its safety risks since mid-2008, if not before, Defendant nevertheless concealed and failed to

disclose the defective nature of the Vehicle and its engine to Plaintiff at the time of purchase and *thereafter.*" Doc. 17 at ¶ 142 (emphasis added). Had Defendant not concealed the alleged defect, both when Plaintiff bought the vehicle and when she returned to Hendrick BMW for repairs during the warranty period, then Defendant would not have allegedly breached the implied warranty of merchantability or its express warranty against "defects in materials or workmanship." Id. at ¶ 33 (quoting Defendant's New Vehicle Limited Warranty). In other words, if Defendant had made the alleged defect known to the Plaintiff and had simply replaced the defective engine, then the warranties would not have been breached. Plaintiff's fraudulent concealment claim is therefore "intertwined" with her warranty claims and barred by the economic loss rule. Bussian, 411 F. Supp. 2d at 627.

Plaintiff's claim for violation of the North Carolina UDTPA is likewise barred by the economic loss rule. North Carolina appellate courts have not definitively concluded whether claims for violation of the North Carolina Unfair and Deceptive Trade Practice Act are subject to the economic loss rule. See Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 787 n.5 (4th Cir. 2012) (refusing to dismiss a UDTPA claim under the economic loss rule without guidance from North Carolina appellate courts). However, Plaintiff's UDTPA claim fails when the fraudulent concealment claim is barred. Plaintiff's UDTPA claim relied on the same alleged acts of concealment as her fraudulent concealment claim. "By failing to disclose and concealing the defective nature of the N63 engine from Plaintiff, Defendant violated the NCUTPA as it represented that the Vehicle and its engine had characteristics and benefits that it does not have." Doc. 17 at ¶ 128. As in the fraudulent concealment allegations, this paragraph alleging violation of the UDTPA is similarly "intertwined with" Plaintiff's warranty-based claims. Bussian, 411 F. Supp. 2d at 627.

While the economic loss rule may not bar *all* claims of unfair trade practices alleging only economic losses, the rule does bar claims "involving allegations of a defective product where the only damage alleged is damage to the product itself and the allegations of unfair trade practices are intertwined with the breach of contract or warranty claims." Id.  Since the Fourth Circuit decided Ellis, other courts have barred UDTPA claims under the economic loss rule. See Dillon v. Leazer Grp., Inc., 347 F. Supp. 3d 547, 558 (E.D.N.C. 2019); Malone v. Tamko Roofing Products Inc., No. 3:13-cv-00089-MOC-DCK, 2013 WL 5561628, at *3 (W.D.N.C. Oct. 8, 2013). Accordingly, Plaintiff's claim for violation of the UDTPA is barred by the economic loss rule.

The undersigned respectfully recommends that BMW's Motion to Dismiss Plaintiffs' UDTPA and fraudulent concealment claims be granted.

### C. **Plaintiff Has Alleged Reliance to Support Her Claim for Breach of Express Warranty**

Plaintiff has sufficiently pled the element of reliance to withstand Defendant's motion to dismiss her claim for breach of express warranty (Count III).

Under North Carolina law, a breach of express warranty claim requires: (1) an express warranty of fact or a promise as to the product, (2) the plaintiff's reliance on the warranty in choosing to purchase the product, and (3) the defendant's breach of the warranty. Harbour Point Homeowners' Ass'n, Inc. v. DJF Enters., Inc., 697 S.E.2d 439, 447 (2010).

Defendant primarily relies on comparisons to Maxwell v. Remington Arms Co., No. 1:10CV918, 2014 WL 5808795 (M.D.N.C. Nov. 7, 2014) in arguing that Plaintiff has failed to adequately plead reliance. In Maxwell, the court dismissed the express warranty claim because plaintiff merely "alluded" to a warranty, and "never alleged the terms of that warranty, that he received the warranty prior to purchase, or that he otherwise relied on the warranty." Id. at *4.

In contrast, Plaintiff's pleading of the reliance element in this case is distinguishable from Maxwell. Plaintiff alleges reliance based on BMW's New Vehicle Limited Warranty and Certified Pre-Owned Limited Warranty, even quoting relevant portions of the New Vehicle Limited Warranty. Doc. 17 at ¶¶ 29, 33. Although Defendant contends that Plaintiff did not allege specific warranty terms, she emphasizes that "[p]rior to purchasing the Vehicle," she relied on the warranties "including the representation that BMW would repair the Vehicle's engine upon discovery of a defect in material or workmanship." Id. at ¶ 29.

Plaintiff further alleges that she received the warranties prior to purchasing the vehicle, and relied on them at the time of purchase. "In connection with the sale of the Vehicle to the Plaintiff, Defendant provided Plaintiff with [the warranties]… Plaintiff relied on Defendant's warranty when she agreed to purchase the Vehicle and Defendant's warranty was the basis of the bargain." Id. at ¶¶ 114-15. Moreover, Plaintiff alleges that she relied on the warranties and "would not have purchased the Vehicle, or would have paid less for the Vehicle, had she known, prior to the respective time of purchase, that the Vehicle contained the defects identified herein." Id. at ¶ 120.

Plaintiff has adequately alleged reliance on Defendant's warranties and Defendant's motion to dismiss her breach of express warranty claim should be denied.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant's "Motion to Dismiss," Doc. 19, be **GRANTED IN PART** and **DENIED IN PART**. That is, the undersigned respectfully recommends that the Motion to Dismiss be **DENIED** as to Counts I-III and **GRANTED** as to Counts IV and V.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same.  Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989).   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Robert J. Conrad, Jr.

Signed: June 25, 2020

David S. Cayer
United States Magistrate Judge