UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-36-RJC-DSC

| | |
|---|---|
| RASHONDA WHEELER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BMW OF NORTH AMERICA LLC, ) <br> ) <br> Defendant. ) <br> ) <br> ) | ORDER |

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss, (Doc. No. 19), Defendant's Memorandum in Support, (Doc. No. 20); Plaintiff's Memorandum in Opposition, (Doc. No. 22); Defendant's Reply, (Doc. No. 23); the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 24), recommending that this Court grant in part and deny in part Defendant's Motion to Dismiss; Plaintiff's Objection to the M&R, (Doc. No. 25); Defendant's Reply to Plaintiffs' Objection, (Doc. No. 28); Defendant's Objection to the M&R, (Doc. No. 26); Plaintiff's Reply to Defendant's Objection, (Doc. No. 27); and Plaintiff's Notices of Supplemental Authority, (Docs. Nos. 30, 31).

I.  BACKGROUND

Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, the Court adopts the facts as set forth in the M&R.

1

## II. STANDARD OF REVIEW

The district court has authority to assign non-dispositive pretrial matters pending before the Court to a magistrate judge to "hear and determine." 28 U.S.C. § 636(b)(1)(A). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). De novo review is not required by the statute when an objecting party makes only general or conclusory objections that do not direct a court to a specific error in the recommendations. Orpiano v. Johnson, 687 F.2d 44 (4th Cir. 1982). Further, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 178 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly, this Court has conducted a review of the Magistrate Judge's M&R.

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. Fannie Mae v. Quicksilver LLC, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

At the same time, specific facts are not necessary—the complaint need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc., 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

The Magistrate Judge recommended that this Court grant in part and deny in part Defendant's Motion to Dismiss. (Doc. No. 24). Specifically, the Magistrate Judge recommended denying the motion as to Plaintiff's warranty claims, (id. at 6–10, 14–15), and granting the motion as to Plaintiff's Unfair and Deceptive Trade Practices Act (UDTPA) claim, N.C. Gen. Stat. § 75-1.1, and fraudulent concealment claim, both of which the Magistrate Judge determined were prevented by the economic loss rule. (Id. at 10–14). The parties have each filed an objection to the M&R.

Plaintiff objects to the Magistrate Judge's conclusion that the economic loss rule bars the UDTPA claim. (Doc. No. 25). Plaintiff argues that North Carolina has

3

not determined whether the economic loss rule applies to UDTPA claims, and that the Fourth Circuit has explicitly declined to apply the rule to North Carolina UDTPA claims as a result. (Id. at 1–2, citing Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 787 n.5 (4th Cir. 2012), among other cases). Plaintiff further argues that applying the economic loss doctrine to UDTPA claims would frustrate the purpose of the UDTPA. (Id. at 2–3). Plaintiff also suggests that, even if the economic loss rule does apply, Plaintiff's claim falls into the "willful injury" exception. (Id. at 3–4). Since her initial objection Plaintiff has also filed supplemental authority to bolster her argument, citing subsequent cases in which courts have declined to dismiss UDTPA claims against this Defendant for the same or similar actions to those alleged in the Complaint here. (Docs. Nos. 30, 31, citing Jones v. BMW of North America, LLC, No. 1:20-CV-00057, 2020 WL 5752808 (M.D.N.C. Sept. 25, 2020); Harris et al. v. BMW of North America, LLC, No. 4:19-cv-00016-ALM (E.D. Tex., December 3, 2020)). Defendant replies that the cases Plaintiff cites are distinguishable, and that the "willful injury" exception does not apply because BMW was not behaving fraudulently and the statements in question were made by independently-owned dealers rather than by BMW. (Doc. No. 28).

Defendant, meanwhile, objects to the Magistrate Judge's conclusion that Plaintiff's warranty claims should survive the Motion to Dismiss. (Doc. No. 26). Defendant argues that Plaintiff's warranty-based claims were made after the expiration of the statute of limitations. (Id. at 1–2). In contrast to the Magistrate Judge's recommendation, Defendant argues that Plaintiff's claims should not be tolled because Plaintiff failed to make sufficient allegations of fraudulent conduct.

4

(Id. at 3–7). Defendant argues further that Plaintiff cannot rely on the fraudulent concealment argument because Plaintiff was aware, or should have been aware, of the defect and failed to exercise due diligence. (Id. at 7–8). Finally, Defendant argues that Plaintiff failed to allege reliance in support of her claim for express breach of warranty. (Id. at 8–10). Plaintiff replies that she saw the symptoms of the problem, but was told when she brought in the car that this was 'normal,' and was therefore unable to recognize the defect. (Doc. No. 27 at 2). Plaintiff further contends that the BMW dealership is Defendant's agent and acted for BMW. (Id. at 3–4). The Court will address each of these objections in turn.

1. **Plaintiff's Objection: Economic Loss Rule**

"North Carolina has adopted the economic loss rule, which prohibits the purchaser of a defective product from bringing a negligence action against the manufacturer or seller of that product to recover purely economic losses sustained as a result of that product's failure to perform as expected." Wilson v. Dryvit Sys., Inc., 206 F. Supp. 2d 749, 753 (E.D.N.C. 2002), aff'd, 71 F. App'x 960 (4th Cir. 2003). "The economic loss rule addresses the intersection between contract remedies (including warranty remedies) and tort remedies." Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009). Under that rule, "[a] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party." Rountree v. Chowan Cty., 252 N.C.App. 155, 796 S.E.2d 827, 830 (N.C. Ct. App. 2017). "North Carolina law requires courts to limit plaintiffs' tort claims to only those claims which are identifiable and distinct from the primary

5

breach of contract claim." Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018) (quotation marks omitted). In other words, a "tort action must be grounded on a violation of a *duty* imposed by operation of law, and the right invaded must be one that the law provides without regard to the contractual relationship of the parties." Rountree, 796 S.E.2d at 831 (quotation marks omitted) (emphasis in original). "In recognition of the fundamental difference between tort and contract claims, and in order to keep open-ended tort damages from distorting contractual relations, North Carolina has recognized an independent tort arising out of breach of contract only in carefully circumscribed circumstances." Broussard v. Meineke Disc. Muffler Shops, 155 F.3d 331, 346 (4th Cir. 1998) (quotation marks omitted). "In so doing, North Carolina courts have strived to keep tort and contract law ... within their separate spheres." Kelly, 671 F. Supp. 2d at 791.

A North Carolina Court of Appeals found that "while claims for negligence are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud are not so barred and, indeed, '[t]he law is, in fact, to the contrary: a plaintiff may assert both claims.'" Bradley Woodcraft, Inc. v. Bodden, 795 S.E.2d 253, 259 (N.C. Ct. App. 2016) (citing Jones v. Harrelson & Smith Contractors, LLC, 670 S.E.2d 242, 250 (N.C. Ct. App. 2008)). In Legacy Data Access, the Fourth Circuit examined Bradley Woodcraft and explained:

> Bradley Woodcraft is simply another application of the principle that the economic loss rule does not bar tort claims based on an independent legal duty, which is "'identifiable' and distinct" from the contractual duty… What matters is not whether a plaintiff has alleged a negligence tort or an intentional tort, but whether the defendant has breached some duty other than a contractual duty, such that the tort claim is "identifiable and distinct" from the breach of contract claim.

6

Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 166 (4th Cir. 2018). In other words, the economic loss rule negates even fraud claims if the fraud claim in question is essentially a "breach of contract claim that also sounds in fraud." Id.

In the intervening time since the Magistrate Judge's issued the M&R in this case, another North Carolina federal court has examined this question under similar circumstances involving the same Defendant. See Jones v. BMW of N. Am., LLC, No. 1:20-CV-00057, 2020 WL 5752808, at *10 (M.D.N.C. Sept. 25, 2020). The court's analysis in Jones is instructive. Drawing a distinction between allegations of concealment that occurred before and after the purchase of the vehicle and warranty, the court found that the "extent to which [Plaintiff]'s fraudulent concealment and UDTPA claims are barred by the economic loss rule [] depends on whether [Plaintiff] has sufficiently alleged that BMW had a duty to disclose the N63 engine defects prior to the sale of the vehicle and the execution of the warranties." Jones, 2020 WL 5752808 at *10 (M.D.N.C. Sept. 25, 2020). Given that Plaintiff had alleged BMW had such a duty prior to the sale of the vehicle and the execution of the warranties, the Jones court denied Defendant's motion to dismiss.

While the economic loss rule generally bars claims for economic loss stemming from breach of contractual obligations, the rule does not extend to torts based on an independent duty that is "identifiable" and "distinct" from the breach of contract claim. Cadrillion, 889 F.3d at 166. This exception applies when a plaintiff successfully alleges tort claims related to the inducement of the contract rather than claims arising out of the contract itself. Jones, 2020 WL 5752808 at *9 n.8

7

("[Plaintiff] alleges unfair and deceptive trade practices at least partially in relation to the inducement of the contract, separate from his claims under the warranty. To that extent, Bussian is inapplicable. This is consistent with the decisions of multiple courts that have declined to extend the holding of Bussian in similar cases. See, e.g., In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig., No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *36 (D.N.J. July 29, 2015); In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 966–67 (N.D. Cal. 2014)") (referring to Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d. 614 (M.D.N.C. 2006)).

Plaintiff in this case does indeed plead fraudulent concealment and UDTPA claims that relate to the inducement of the purchase and warranty.[1] In her Amended Complaint, Plaintiff alleges that Defendant violated the UDTPA and engaged in fraudulent concealment by acquiring knowledge of the vehicle's engine defects and failing to disclose these same defects prior to sale in an effort to induce the sale, and furthermore that Plaintiff would not have purchased the vehicle if she had known of the defect. (Doc. No. 17 at 6–9, 23–24, 26–28). Plaintiff's Complaint alleges these facts with sufficient specificity to survive at the motion to dismiss stage, including alleging that: Defendant: learned of the defect by mid-2008 from

---

[1] Plaintiff's UDTPA and fraudulent concealment claims, as alleged in the Amended Complaint, appear to rely on events and duties that existed prior to the purchase of the vehicle and warranties. (Doc. No. 17 at 23–28). The Court notes without deciding that, if after further development Plaintiff instead bases these two claims on events and duties that existed *after* the vehicle and warranty purchases, the economic loss rule might bar such allegations as being "intertwined" with the contractual claims. Bussian, 411 F. Supp. at 627; Cadrillion, 889 F.3d at 166. That issue survives for potential consideration after further development in the case. Diop v. BMW of N. Am., LLC, No. 5:20-CV-00025-M, 2021 WL 51757, at *5 (E.D.N.C. Jan. 6, 2021).

8

testing data and specifically-named consumer complaints in addition to other sources; issued 's technical service bulletins (TSBs) addressing the complaints of excessive oil consumption which shows Defendant knew of the problem:, advised its service technicians to simply add more engine oil as a prophylactic solution; launched a Customer Care Package and N63 Customer Loyalty Offer to mask the defect;, and Plaintiff relied on Defendant's warranties representing to the contrary before purchasing the vehicle. (Id. at 4–7, 9–18, 26). The Court must treat these allegations as true when reviewing a motion to dismiss. Erickson, 551 U.S. 93–94. As a result, Claims IV and V survive at the motion to dismiss stage to the extent that they allege breach of duty prior to and leading to the inducement of the purchase and warranty. Jones, 2020 WL 5752808 at *10; but see Diop, 2021 WL 51757 at *5 (declining to reach a decision on the economic loss doctrine's applicability to UDTPA claims under nearly identical alleged facts).

### 2. Defendant's Objection: Plaintiff's Warranty Claims

Plaintiff's Counts I and II allege breach of express and implied warranty under the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §2301, et seq., while Counts II and III also allege breach of express and implied warranty under N.C. Gen. Stat. § 25-2-314 and N.C. Gen. Stat. § 25-2-313 respectively. (Doc. No. 17 at 20–21). Because the MMWA does not contain a statute of limitations, "when evaluating timeliness of claims under the MMWA, courts are directed to use the applicable state law." Ferro v. Vol Vo Penta of the Ams., LLC, No. 5:17-CV-194-BO, 2017 WL 3710071, at *2 (E.D.N.C. Aug. 28, 2017). "Under North Carolina law . . . a breach of warranty claim for the sale of goods is subject to a four-year statute of

9

limitations." Diop, 2021 WL 51757 at *3 (citing N.C. Gen. Stat. § 25-2-725(1)).

Defendant argues that Plaintiff's warranty claims are barred by the four-year statute of limitations, because they were filed over four years after Plaintiff knew or should have known of the alleged defect. (Doc. No. 8 at 20). Plaintiff argues that the statute of limitations does not bar the claims because the claims are tolled due to Defendant's fraudulent concealment. (Doc. No. 22 at 6–9). After the Magistrate Judge recommended that the motion to dismiss the warranty claims be denied at this stage due to tolling, (Doc. No. 24 at 8–10), Defendant objected that Plaintiff did not sufficiently allege fraudulent concealment, did not sufficiently allege that she exercised due diligence, and fails the element of reliance needed to support a breach of express warranty claim. (Doc. No. 26).

The fraudulent concealment tolling doctrine exists to prevent a defendant from concealing a fraud until after the statute of limitations had run out. Bailey v. Glover, 88 U.S. 342, 349, 22 L.Ed. 636 (1874). The doctrine holds that in order to toll the limitation period, Plaintiff must demonstrate "(1) [defendant] fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119, 122 (4th Cir. 1995) (citing Weinberger v. Retail Credit Co., 498 F.2d 552, 555 (4th Cir. 1974)).

Here, Plaintiff alleges that Defendant was aware of the engine's defect beginning in at least 2008, and fraudulently concealed this fact from Plaintiff such that Plaintiff did not know about the defect. (Doc. No. 17 at 15, 17). As noted

10

above, Plaintiff alleges that BMW was aware of the problem, as evidenced (among other things) by BMW's issuing of TSBs addressing complaints of excessive oil consumption and other problems with the N63 engine, showing that BMW had knowledge of the issue and did not disclose it to customers like Plaintiff. (Id. at 10–13). Plaintiff additionally alleges that BMW undertook measures to mask, but not repair, the N63 oil problem, including by releasing the "N63 Customer Care Package," showing both knowledge and concealment. (Id. at 13). Furthermore, according to the Amended Complaint, Plaintiff was told at a BMW dealership that there was nothing wrong with the N63 and that having to add oil in between oil changes was "normal." (Id. at 1).[2] "When taken as true for purposes of a motion to dismiss — as the court must — [Plaintiff's] allegations state a plausible set of facts that would entitle [her] to tolling of the statute of limitations." Jones, 2020 WL 5752808 at *4.

---

[2] Defendant argues that such a statement was not made by BMW but instead by an independently-owned BMW dealer. (Doc. No. 26 at 6). Plaintiff alleges instead that the dealership in question was an agent of Defendant. (Doc. No. 17 at 7). Specifically, Plaintiff alleges that "BMW controls the execution of all warranty repairs by its dealers, as it provides training, materials, special tools, diagnostic software, and replacement parts to its dealers, and demands that the warranty repairs be performed in strict accordance with its repair guidelines, Technical Service Bulletins, and other instructions. In return, BMW pays its authorized dealerships monetary compensation for such warranty repairs." (Doc. No. 17 at 7). In North Carolina, the establishment of an agency relationship "depends on the degree of control retained by the principal over the details of the work as it is being performed." Vaughn v. N. Carolina Dep't of Hum. Res., 296 N.C. 683, 686 (1979). Plaintiff's allegations in the Amended Complaint would establish an agency relationship if true, and at this stage the Court must treat Plaintiff's allegations as such. Erickson, 551 U.S. at 93–94. Therefore for the purposes of the motion to dismiss, the Court will assume that an agency relationship exists between Defendant and the BMW dealership in question.

Defendant argues that Plaintiff discovered the alleged engine defect, or alternatively that Plaintiff failed to exercise due diligence such as an internet search to discover the defect herself. (Doc. No. 26 at 7–8). Plaintiff's Complaint alleges that she noticed a high rate of oil loss and repeatedly brought the car into the shop for it, (Doc. No. 17 at 4–5), and alleges that there was in fact a defect in the engine, (Id. at 24). However, nothing in the Amended Complaint alleges that Plaintiff actually knew that there was an engine defect at the time in question. Defendant argues that even if Plaintiff has not alleged actual knowledge of the defect, that Plaintiff has alleged facts indicating that she should have been alerted to any alleged defect and failed to do due diligence. (Doc. No. 26 at 8). Yet the question of what Plaintiff should have known, and whether the steps she took to discover the defect were sufficient, are questions more appropriate for disposition after further factual development rather than at the motion to dismiss stage. Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 554 (4th Cir. 2019).

Finally, Defendant argues that Plaintiff's express warranty claim fails because Plaintiff has failed to plead the reliance element with the required degree of specificity. (Doc. No. 26 at 8–10, citing Maxwell v. Remington Arms Co., LLC, No. 1:10CV918, 2014 U.S. Dist. LEXIS 158153, at *9 (M.D.N.C. Nov. 7, 2014) (dismissing plaintiff's claim for breach of express warranty)). Plaintiff has alleged that she received Defendant's warranties prior to purchase, that she relied upon Defendant's warranties in making her decision to purchase the vehicle, that the warranties promised to repair or replace any defective parts within a certain number of years or miles. (Doc. No. 17 at 6). Because Plaintiff "has alleged that

12

[she] received both of the subject warranties prior to purchase; that, among other things, the warranties represented that BMW would repair the vehicle's engine in the event of a defect; that [she] relied on that representation; and that the representation was material to [her] decision to purchase the vehicle," Plaintiff has pleaded the reliance element with sufficient specificity to survive at the motion to dismiss stage. Jones, 2020 WL 5752808 at *6 (comparing Remington, 2014 WL 5808795 at *4 (finding the plaintiff failed to plead reliance where he alluded to the written limited warranty but did not allege "the terms of that warranty, that he received the warranty prior to purchase, or that he otherwise relied on the warranty"), with Bussian, 411 F. Supp. 2d. at 621 (finding reliance sufficiently pleaded where plaintiff alleged that he "reasonably relied on Defendants' representations and warranties" and those representations "became a basis of the bargain" between the parties, specifying that "[a] higher level of specificity is not required ... at the pleadings stage")).

Plaintiff has alleged facts related to her warranty claims that, if true, are sufficient to toll the statute of limitations pursuant to the fraudulent concealment tolling doctrine. Supermarket of Marlinton, 71 F.3d at 122. Plaintiff has also pled her express warranty claim with the requisite amount of specificity at this stage. Jones, 2020 WL 5752808 at *6. Plaintiff's warranty claims therefore will survive the motion to dismiss. This Court has reviewed *de novo* the objections to the M&R related to Plaintiff's warranty claims, and having conducted the analysis, finds the Magistrate Judge's recommendations with regard to the warranty claims to be correct and in accordance with the law. Therefore this Court will accept the findings and

13

conclusions of the Magistrate Judge with regard to the warranty claims.

## IV. CONCLUSION

Regarding the portion of the M&R related to the economic loss rule, following an independent review of the M&R, Plaintiff's Objection thereto, and a *de novo* review of the record, the Court concludes that Claims IV and V survive at this stage to the extent that they allege fraudulent conduct and misrepresentations prior to and leading to the inducement of the purchase of the vehicles and warranties. Regarding the portion of the M&R related to the Plaintiff's warranties claims, following an independent review of the M&R, Defendant's Objections thereto, and a *de novo* review of the record, this Court concludes that the M&R's recommendations are correct and in accordance with law. Accordingly, the findings and conclusions of the Magistrate Judge related to Plaintiff's warranties claims are accepted.

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (Doc. No. 24), is **ADOPTED in part**;

    a. The M&R is **ADOPTED** with regard to its findings and conclusions related to the Plaintiff's warranties claims;

2. Defendant's Motion to Dismiss, (Doc. No. 9), is **DENIED**.

**SO ORDERED**.

Signed: April 14, 2021

Robert J. Conrad, Jr.
United States District Judge

15

Case 3:20-cv-00036-RJC-DSC   Document 32   Filed 04/14/21   Page 15 of 15